Floyd MACLIN, Jr., Movant–Appellant,

v.

STATE of Missouri, Respondent–Respondent.

No. 26867.

Missouri Court of Appeals, Southern District, Division Two.

Feb. 7, 2006.

Mark A. Grothoff, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cecily L. Daller, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

JEFFREY W. BATES, Chief Judge.

Floyd Maclin, Jr. ("Movant") appeals from an order denying his Rule 29.15 motion requesting post-conviction relief.[1] The motion alleged, *inter alia*, that Movant's trial counsel was ineffective for failing to call a witness at the trial. The motion court concluded otherwise. Movant contends that conclusion is clearly erroneous. We affirm.

## I. Factual and Procedural Background

In February 2001, Movant was arrested by officers from the Springfield Police Department after he tried to steal liquor from an Albertson's grocery store. Movant was charged with second degree robbery for violating § 569.030.1, which states: "[a] person commits the crime of robbery in the second degree when he forcibly steals property."[2] The phrase, "forcibly steals," is defined by § 569.010(1) in the following way:

> "Forcibly steals", a person "forcibly steals", and thereby commits robbery, when, in the course of stealing, as defined in section 570.030, RSMo, he uses or threatens the immediate use of physical force upon another person for the purpose of:
>
> (a) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or
>
> (b) Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the theft[.]

Stealing occurs when a person "appropriates property or services of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion." § 570.030.1. Movant was charged with second degree robbery because he attempted to leave the store with the stolen liquor and was involved in an altercation with four Albertson's employees: Matt Young ("Young"); Jason Lindsay ("Lindsay"); Daryn Davis ("Davis"); and Chad Lawson ("Lawson").

After Movant waived his right to a jury trial, his case was scheduled to be tried to the court in May 2002. A few weeks before the trial, an investigator for Movant's trial counsel contacted Young, Lindsay, Davis and Lawson and asked them to come to the prosecutor's office for an in-

---

**1.** All references to rules are to the Missouri Court Rules (2005).

**2.** All references to statutes are to RSMo (2000).

terview. Young, Lindsay and Davis complied with the request and were interviewed by Movant's trial counsel. Lawson did not come to the interview, and Movant's counsel made no further effort to contact him.

At the trial, Young and Lindsay were the only witnesses called by the State to testify about what transpired at the store prior to the arrival of the police. Their trial testimony is summarized below.

On February 4, 2001, Movant entered the Albertson's grocery store in Springfield, Missouri. Young recognized Movant. Young called Lindsay and told him to keep an eye on Movant. To do so, Lindsay went into the front office. This office is an elevated platform, surrounded with one-way glass, standing about eight feet above the floor level of the store. Lawson was already there.

Movant went to the store's liquor department. From the vantage point of the front office, Lindsay saw Movant pick up at least three bottles of Crown Royal and appear to leave the liquor department with the merchandise hidden on his person. Lindsay called Davis, the store manager, and told him what had happened. Lindsay and Lawson then left the front office. Lindsay went to the liquor department and confirmed that the bottles of Crown Royal had not been left there by Movant. Lawson and Young positioned themselves at the store's front doors. They were joined by Lindsay and Davis.

When Movant got to the front doors, he was stopped by Lawson. Davis asked Movant if he needed to pay for anything. Movant said, "no," and denied that he had done anything. He then attempted to leave the store. When Davis put out his arm to block the door, Movant "started to use force to run." He shoved Davis out the door and got onto the parking lot. All four Albertson's employees were trying to grab Movant's arms and get him down on the ground because he was still "[f]ighting pretty hard, still trying to shove [Davis] out of the way, and run." Movant started swinging a Crown Royal bottle and hit Lawson in the forehead. Both Young and Lindsay believed Movant was trying to hit somebody with the bottle. Movant then bit Lindsay's thumb. Lindsay started screaming that Movant "was trying to bite my thumb off...." Davis picked Movant up to get him off balance, and the pair toppled to the ground. Davis sustained a broken ankle in the fall. Lindsay and Young got on top of Movant to hold him down. Lawson went into the store and obtained some handcuffs, but the employees were only able to cuff one of Movant's wrists. Because Movant continued to struggle, Lindsay and Young remained on top of Movant for about five minutes until police arrived.

The State then called the two officers who were sent to the store to investigate this incident: Anthony Gomez ("Officer Gomez") and Kent Bishop ("Officer Bishop"). Officer Gomez testified that when he arrived on the scene, Movant was not fully cuffed and was still resisting. Officer Gomez provided medical assistance to Davis and told Lindsay that he needed to be seen by ambulance personnel. On cross-examination, Officer Gomez admitted that, besides Davis and Lindsay, no other store employee reported being hurt during the struggle. Specifically, "[n]o one came up to [Officer Gomez] and said they were hit in the head with a bottle." During the cross-examination of Officer Bishop, defense counsel established that the officer had interviewed all four Albertson's employees involved in the incident. Only Davis and Lindsay reported being injured. Officer Bishop did not recall anyone saying he had been hit in the head with a bottle. If the officer had received such informa-

tion, it would have been included in his report.

Defendant testified in his own behalf. He admitted that he went to the Albertson's store to steal liquor. Once in the liquor department, he took four bottles of Crown Royal whiskey and hid them inside his shirt. The bulk of the bottles was concealed by a three-quarter length leather coat Movant was also wearing. He also admitted that, until he attempted to leave the store, he was not touched by any Albertson's employee. The gist of Movant's testimony was that he had intended to cooperate when he was caught stealing and only fought with Albertson's employees because they attacked him first. On cross-examination, Movant gave the following testimony:

Q. And during this time [when Movant was biting Lindsay's thumb] you were trying to give up, I assume, right?

A. I never struggled with these gentlemen with the exception of biting that gentleman who was trying to twist my neck.

Q. How about swinging the bottle of Crown Royal at someone?

A. Well, that's interesting because those Crown Royal bottles are pretty thick. They have strings attached to them.

Q. Yes, they do.

A. If I was to swing them over my head with four people surrounding—

Q. Just answer my question.

A. Absolutely not.

Q. You didn't?

A. No sir.

Q. So those two gentlemen [Young and Lindsay] who got up there earlier lied?

A. I would say they are mistaken, sir.

In closing argument, Movant's trial counsel noted that the State had only called two of the four Albertson's employees involved in this incident. After pointing out various contradictions and inconsistencies in their testimony, counsel then made the following argument:

We also heard stories from [Young and Lindsay] that there was the flailing of this bottle, this huge heavy bottle, spinning around trying to hit somebody in the head and did hit Chad Lawson in the forehead while it's being swung around. It seems a little unbelievable especially when we hear from the police officers that reported to the scene talking to all of the individuals involved, no mention. No mention at all about this person being whacked in the head with a full Crown Royal bottle and being thrown to the ground. No mention of it at all by any of them. Not then, but all of a sudden now that's part of the story.

At the conclusion of the trial, the judge found Movant guilty of second degree robbery because the State had "quite easily" met its burden of proving each element of the crime beyond a reasonable doubt. Movant received a 12–year sentence. We affirmed the conviction and sentence on direct appeal in *State v. Maclin,* 113 S.W.3d 304 (Mo.App.2003).

Movant then filed a Rule 29.15 motion to vacate, set aside or correct judgment or sentence. New counsel was appointed, and an amended motion was filed. In Movant's amended motion, he alleged, *inter alia,* that trial counsel was ineffective because he failed to call Lawson as a witness. In January 2005, an evidentiary hearing was held on Movant's amended motion. The judge assigned to rule on the motion was the same one who had served as the trier-of-fact at Movant's trial. At the motion hearing, the court heard testi-

mony from Movant, his trial counsel and Lawson. The relevant portions of their testimony are summarized below.

Movant was asked why he alleged that his trial attorney was ineffective for failing to call Lawson as a witness. Movant said he wanted Lawson to testify because "he was the one that allegedly was struck in the head with the Crown Royal bottle, and I was hoping to get his testimony to refute that."

Movant's trial counsel testified that he might have wanted to refute Young's testimony about Movant swinging the bottle and hitting Lawson "[i]f I had a definite way of doing that...." Counsel noted, however, that Lawson did not show up for the pre-trial interviews conducted at the prosecutor's office. Counsel had reviewed the police reports prior to trial and had no reason to believe Lawson's testimony would benefit Movant.

Lawson testified that he was involved in the altercation with Movant. The scuffle started when Movant walked out of the store after he had been told not to leave by Davis. The scuffle occurred when Davis tried to get Movant to go back inside the store. Lawson said they "were trying to get him to either go back in or trying to get him down, and it took all four of us." Lawson confirmed that, at one point in the confrontation, he was struck in the head with a Crown Royal bottle. Lawson was standing in front of Movant at the time and was struck on top of the head. The blow knocked Lawson down and left a knot on his head. The bottle, which was in a bag with drawstrings, was attached to Movant's wrist. Lawson did not know whether he had been struck by Movant on purpose, but "[Movant's] arms were going everywhere," and he was pushing, shoving and swinging his hands in an attempt to get away. Lawson agreed that Movant "could have been" deliberately swinging the Crown Royal bottle at him. Movant continued resisting until he was brought to the ground. Three of the four Albertson's employees who tried to stop Movant from leaving the store with the stolen liquor were injured in the affray because Lawson received a knot of his head, Davis had a compound fracture of his leg, and Lindsay had to get stitches in his hand.

After hearing the foregoing evidence, the motion court concluded that Movant's trial counsel was not ineffective for failing to call Lawson as a witness. The decision not to call Lawson was a reasonable trial strategy and Movant failed to prove prejudice because: (1) trial counsel did not know what Lawson was going to say prior to trial; (2) it is a reasonable trial strategy not to call a witness whose testimony is unknown and possibly damaging; and (3) if Lawson had testified, his testimony could have been damaging to the defense. This appeal followed.

## II. Standard of Review

Movant bears the burden of proving his allegation that trial counsel was ineffective. Rule 29.15(i). There is a strong presumption that trial counsel was effective, and Movant bears a heavy burden of overcoming that presumption by a preponderance of the evidence. *Storey v. State,* 175 S.W.3d 116, 125 (Mo. banc 2005). To determine whether an attorney provided ineffective assistance to a criminal defendant, we apply the standards established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail, Movant must prove that: (1) counsel's performance did not conform to the degree of skill, care and diligence of a reasonably competent attorney; and (2) counsel's poor performance prejudiced the defense. *Deck v. State,* 68 S.W.3d 418, 425 (Mo. banc 2002). For prejudice to exist, Movant must prove "there is a *reasonable*

*probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 426 (italics in original). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. Movant must prove each portion of this two-pronged performance and prejudice test in order to succeed on his ineffective assistance of counsel claim:

> A criminal defendant must satisfy *both* the performance prong and the prejudice prong to prevail on an ineffective assistance of counsel claim. In reviewing such a claim, courts are not required to consider both prongs; if a defendant fails to satisfy one prong, the court need not consider the other. And, a court need not determine the performance component before examining for prejudice. If it is easier to dispose of the claim on the ground of lack of sufficient prejudice, the reviewing court is free to do so.

*Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987) (italics in original).

■ As required by Rule 29.15(j), the trial court issued findings of fact and conclusions of law to support its decision denying Movant's motion. Our review is "limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." Rule 29.15(k); *State v. Tokar*, 918 S.W.2d 753, 761 (Mo. banc 1996). Findings of fact and conclusions of law are clearly erroneous only when, after reviewing the entire record, this court is left with the definite and firm impression that a mistake has been made. *State v. Taylor*, 929 S.W.2d 209, 224 (Mo. banc 1996).

### III. Discussion and Decision

■ In Movant's sole point on appeal, he contends the denial of his motion for post-conviction relief was clearly erroneous because the decision not to call Lawson as a witness constituted ineffective assistance of counsel. According to Movant, Lawson would have testified that he was not intentionally hit in the head by Movant, which would have corroborated Movant's testimony and contradicted the testimony of Young and Lindsay. If Lawson had testified, Movant claims there is a reasonable probability that the outcome of his trial would have been different. Neither argument is persuasive.

■ The trial court concluded that trial counsel's decision not to call Lawson was a reasonable trial strategy. It is well-settled that trial strategy decisions are virtually unchallengeable and rarely furnish a ground for finding ineffective assistance of counsel. *Storey v. State*, 175 S.W.3d 116, 125 (Mo. banc 2005); *Middleton v. State*, 103 S.W.3d 726, 736–37 (Mo. banc 2003); *see also State v. Chambers*, 891 S.W.2d 93, 109–10 (Mo. banc 1994). That includes trial counsel's strategic decisions concerning the selection of the witnesses and evidence that will be presented on a defendant's behalf. *Williams v. State*, 168 S.W.3d 433, 443 (Mo. banc 2005); *Leisure v. State*, 828 S.W.2d 872, 875 (Mo. banc 1992). In *Worthington v. State*, 166 S.W.3d 566 (Mo. banc 2005), our Supreme Court addressed the issue of whether trial counsel was ineffective for failing to call a witness. The Court succinctly summarized the applicable principles this way:

> To prevail on a claim of ineffective assistance of counsel for failure to call a witness, the following must be shown: "1) Trial counsel knew or should have known of the existence of the witness; 2) the witness could be located through reasonable investigation; 3) the witness would testify, and 4) the witness's testimony would have produced a viable defense." Even then, "counsel's decision

not to call a witness is presumptively a matter of trial strategy and will not support a claim of ineffective assistance of counsel unless the defendant clearly establishes otherwise." As a matter of trial strategy, the determination to not call a witness is virtually unchallengeable. "If a potential witness's testimony would not unqualifiedly support a defendant, the failure to call such a witness does not constitute ineffective assistance."

*Id.* at 577 (citations omitted). After reviewing the record, we agree with the motion court's conclusion that the failure to call Lawson did not constitute ineffective assistance of counsel. Lawson's testimony would not have provided Movant with a viable defense to the charge of second degree robbery or unqualifiedly supported Movant's theory of defense or trial testimony.

The crime of second degree robbery is composed of two elements: stealing and the use of actual or threatened force. § 569.030; § 569.010(1); *Eason v. State,* 52 S.W.3d 24, 27 (Mo.App.2001); *State v. Lewis,* 633 S.W.2d 110, 114 (Mo.App.1982). In order to convict Movant of second degree robbery under the circumstances present here, the State was required to prove that Movant intentionally used physical force to prevent or overcome resistance to his taking of Albertson's property. *See State v. Maclin,* 113 S.W.3d 304, 306–07 (Mo.App.2003). It was not necessary for the State to prove that Movant either caused, or intended to cause, physical injury to anyone. *See State v. Applewhite,* 771 S.W.2d 865, 867–68 (Mo.App.1989); *State v. Harris,* 622 S.W.2d 742, 745 (Mo.App. 1981); MAI–CR 3d 323.04. In *Applewhite,* the evidence that defendant pushed the store manager aside and knocked him up against the door was sufficient to support a conviction for second degree robbery. *Applewhite,* 771 S.W.2d at 868. In

*Harris,* the defendant shoved a security guard and pulled stolen clothes from the guard's grasp. This conduct likewise constituted the use of sufficient force to support a conviction for second degree robbery. *Harris,* 622 S.W.2d at 745. "[I]t is not even necessary that the victim be touched to support a submission of forcible stealing under § 569.030." *Applewhite,* 771 S.W.2d at 868. If Lawson had been called as a witness, his testimony would not have provided Movant with a viable defense. Instead, Lawson's testimony would have supported the State's case because his description of events tended to prove that Movant did use physical force against the Albertson's employees to overcome or prevent their resistance to Movant's theft of Albertson's property.

Movant's argument also fails because, if Lawson had been called as a witness, his testimony would not have unqualifiedly supported either Movant's theory of defense (Movant was attacked by the Albertson's employees, and the contrary testimony of Young and Lindsay was not credible) or Movant's trial testimony that he did not hit Lawson in the head with a bottle.

Preliminarily, it is important to note that Lawson failed to show up for a pretrial interview by Movant's defense attorney. Lawson was the only Albertson's employee who declined to do so. As a result, defense counsel did not know what Lawson would say if called as a witness, but there was no indication from the police reports that his testimony would help Movant. Furthermore, Lawson's failure to appear for an interview could have indicated hostility toward Movant and/or his attorney.

At the trial itself, Young and Lindsay were the only witnesses who described the events that happened before police arrived or claimed to have seen Movant hit Law-

son on the head with the Crown Royal bottle. Movant's trial counsel tried to cast doubt on the testimony of Young and Lindsay in the following ways. Counsel pointed out that neither Davis nor Lawson had been called as witnesses to testify about what happened. In particular, Lawson was not called to testify that he had been struck in the head with a bottle by Movant. Counsel elicited favorable testimony from Officer Gomez and Officer Bishop that Lawson had not reported any such injury at the scene. Movant testified on his own behalf and said he was willing to give up quietly and cooperate once he was caught stealing; he only resisted because he was attacked by the Albertson's employees. Movant also testified that: (1) he "absolutely" did not hit Lawson on the head with a Crown Royal bottle; and (2) Young and Lindsay were both mistaken when they claimed Movant did so. Relying on all of the foregoing evidence, Movant's trial counsel generally attacked the credibility of Young and Lindsay and suggested that their version of events was inaccurate. This tactic appears to have been somewhat effective based on the judge's comment that he was inclined to "throw out" Lindsay's testimony because it was "a little bit over the top."

■ If Movant's trial counsel had called Lawson as a witness, Movant's theory of defense and Movant's own believability as a witness would have been damaged. For the reasons already explained above, Lawson's testimony would have corroborated the testimony of Young and Lindsay and refuted Movant's version of events, thereby assisting the State in proving that Movant did commit the crime of second degree robbery. Given Movant's emphatic denial that he struck Lawson on the head with the Crown Royal bottle, contrary testimony from Lawson also would have significantly undermined Movant's credibility.

Similarly, it would have undercut both Movant's theory of the case and his credibility to have Lawson testify that he "could have been" struck with the Crown Royal bottle by Movant on purpose while he was trying to escape with stolen property in his possession. Trial counsel's failure to call a witness who would undermine the defendant's theory of the case or contradict his or her trial testimony does not constitute ineffective assistance of counsel. *Clayton v. State*, 63 S.W.3d 201, 208–09 (Mo. banc 2001); *Crooks v. State*, 131 S.W.3d 407, 411 (Mo.App.2004); *Helmig v. State*, 42 S.W.3d 658, 670 (Mo.App.2001); *State v. Jones*, 885 S.W.2d 57, 58 (Mo.App.1994).

The motion court concluded that Movant's trial counsel was not ineffective for failing to call Lawson. The court's findings of fact and conclusions of law concerning this issue are not clearly erroneous. Rule 29.15(k); *State v. Tokar*, 918 S.W.2d 753, 761 (Mo. banc 1996). Therefore, Movant's point on appeal is denied, and the order denying Movant's amended motion for post-conviction relief is affirmed.

SHRUM, P.J., and BARNEY, J. Concur.