**Sammy J. COLLINS, Movant–Appellant,**

v.

**STATE of Missouri, Respondent–Respondent.**

No. 28104.

Missouri Court of Appeals,
Southern District,
Division Two.

June 26, 2007.

Nancy A. McKerrow, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Assistant Attorney General, Jefferson City, for Respondent.

PHILLIP R. GARRISON, Judge.

Sammy Collins ("Movant") appeals from the denial of his Rule 29.15[1] motion for post-conviction relief. He contends that his trial counsel was ineffective in: (1) failing to strike a juror for cause; (2) failing to impeach a witness; and (3) failing to call a witness. We affirm.

Movant was charged in Howell County with the class B felony of first-degree child molestation, a violation of Section 566.067. After a change of venue to Wright County, a jury convicted Movant and sentenced him to twelve years imprisonment in the department of corrections. We affirmed Movant's conviction on direct appeal in *State v. Collins*, 163 S.W.3d 614 (Mo.App. S.D.2005). We recite the facts as related in that opinion without further citation.

A.J.C. ("Victim") was born March 20, 1992, to Movant and Carolyn Jean Collins. Along with Victim's brother ("R.K.C."), the family resided together from 1995 to 2000. The children were removed from their parents' custody in September 2000 after the Division of Family Services ("DFS") found they were living in "filthy" and "deplorable" conditions.

By November 2000, Victim began telling authorities about sexual abuse inflicted on her while at her parents' home. Early on, Victim was reticent and cryptic in her disclosures about what had happened and who was responsible. Nevertheless, by December 2000, Movant was suspected of being one of Victim's abusers. Because of that, he was asked to contact the Mountain View, Missouri, police department. Upon doing so, the interviewing officer first advised Movant of his *Miranda* rights. Movant then agreed to talk with the policeman about "the allegations ... against him by his daughter, referencing sexually abusing her." During the interview, Movant was crying and appeared to be upset about what he had done, at one point saying, "I'm obviously guilty and I'm sorry." Eventually, Movant provided a written confession which read as follows:

> During the summer of the year 2000 I touched my daughter's breast and vagina in a sexual manner. I think it was less than 5 times, but I'm not sure of the number of times. These incidents happened in the bedroom of my home. These incidents happened at different times of the day or night. The details of these incidents are unknown to me at this time.

Victim's testimony at trial revealed the following: Movant "touched her [in the vaginal area;]" he used "[h]is penis[ ]" to touch her; this happened "more than once"; at times Movant went around the house naked; usually Movant's penis was "pointing down" as he walked about naked, but was "pointing straight" when he used it to touch Victim. She further testified that the "touching" usually happened in Movant's bed, Movant was "on top of [her]," and he "would stick his penis in [her] vagina."

During Victim's cross-examination, she denied Delbert Walker ("Walker") (an adult male baby-sitter) had ever "touched his private inside [her] private." She also denied ever being at Walker's house and noticing "white stuff come out of [her]

1. All references to rules are to Missouri Rules of Criminal Procedure (2006) and all references to statutes are to RSMo (2000), unless otherwise indicated.

butt" when she went to the bathroom. Victim made these denials at trial, yet told counselors earlier that these things had occurred.

In a similar vein, during cross-examination, Victim denied having intercourse with her brother (R.K.C.), although in pre-trial interviews she said this had happened. Defense counsel's efforts on re-cross to press Victim about these contradictory statements took this form:

Q. [to Victim by defense counsel] Do you recall if I asked you [in a pre-trial interview] about whether . . . you had sex with your brother?

A. Yes.

. . . .

Q. What did you tell me?

A. I told you that my dad made him . . . do it with me.

Q. Do it with you, you mean sexual intercourse with you?

A. No.

. . . .

Q. What do you mean?

A. He made me suck his dick.

Other witnesses at trial included child advocacy center employee, Barbara Brown ("Brown"), Victim's therapist, Dr. Melissa Hagen ("Dr. Hagen") (a psychologist), law enforcement personnel, DFS employee Beth Bristow ("Bristow"), and Leta Holh (a pediatric nurse who did a SAFE examination of Victim). Their testimony about interviews and examinations of Victim included the following. Walker (the babysitter) vaginally raped and anally sodomized Victim. As a result of Walker's abuse, Victim was incontinent, i.e., "her anus was open, there was no skin folds there and there was just stool that was just seeping out constantly." Moreover, these witnesses told the jury about Victim's allegations that Movant abused her (including acts of sexual intercourse) and

Victim's mother was involved. From her interviews with Victim, Brown concluded Victim's mother "was frequently aware of what was happening [and] often participated in what was happening, was in the same room and did some of the same types of things to her." Bristow testified that Victim had also made allegations that R.K.C. (Victim's brother) had touched her inappropriately.

Following this Court's denial of Movant's direct appeal, Movant filed a motion for post-conviction relief, pursuant to Rule 29.15, which was later amended by appointed counsel. The amended motion contended that Movant's trial counsel was ineffective, in relevant part, as follows:

(a) Trial counsel failed to challenge for cause [venireperson] . . . Billie Bohannan (# 7) [ ("Bohannan") ], [who] served as [a juror] and deliberated [on] Movant's verdict and sentence.

(b) Trial counsel failed to refute [Dr. Hagen's] trial testimony that [Victim] never reported sexual abuse by [R.K.C.] with [Dr. Hagen's] testimony at a pretrial hearing wherein she directly contradicted her trial testimony on this important issue.

(c) Trial counsel failed to call Dr. Rina Sethi [("Dr. Sethi")]to testify that she examined [Victim] on January 20, 2001 and concluded that [Victim's] injuries were the result of recent sexual abuse occurring since [Victim] had been removed from Movant's custody.

The parties stipulated that in lieu of an evidentiary hearing, the motion court could decide the case after considering transcripts from the underlying criminal case and the post-conviction deposition taken of Movant's trial counsel, Keith Gibson ("Gibson"). On October 16, 2006, the court entered its findings of fact and conclusions

of law denying Movant's motion. This appeal followed.

■ Appellate review of the denial of a Rule 29.15 motion for post-conviction relief is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k); *Hill v. State*, 160 S.W.3d 855, 857 (Mo.App. S.D.2005). A motion court's findings are clearly erroneous only if a review of the entire record leaves us with the definite and firm impression that a mistake has been made. *Moss v. State*, 10 S.W.3d 508, 511 (Mo. banc 2000).

Movant has the burden to prove his claim of ineffective assistance of counsel by a preponderance of the evidence. Rule 29.15(i); *Maclin*, 184 S.W.3d 103, 107 (Mo. App. S.D.2006). We review whether an attorney provided a criminal defendant with ineffective assistance of counsel under the two-pronged test developed in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Hill*, 160 S.W.3d at 857. Under *Strickland*, Movant must prove that (1) trial counsel failed to exercise the degree of skill, care and diligence of a reasonably competent attorney, and (2) that failure prejudiced Movant. *Maclin*, 184 S.W.3d at 107. Movant must prove both prongs in order to prevail. *Id.* at 108. Failure to satisfy either prong relieves the motion court of the necessity of reviewing the other. *Hill*, 160 S.W.3d at 858.

Prejudice exists where Movant has demonstrated "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

Movant presents three points on appeal. In Movant's first point, he alleges he was denied effective assistance of counsel, because Gibson failed to strike for cause venireperson Bohannan. Movant contends that this failure deprived him of his right to an impartial jury, because Bohannan indicated she would believe Victim.

During voir dire, the following exchange took place between Gibson and the panel:

Gibson: Anyone who thinks this is a serious allegation, just because this girl said this it had to happen. Anyone believe that?

. . . .

Venireperson Crewse: ... [W]hy would somebody want to put themselves on the stand and .put themselves through that and tell horrible things and embarrassing things just to get what, I mean what would be the reward of that, so I'm sorry, I would probably tend to believe the child.

Gibson: Thank you. Anyone else share her sentiments? ...

Venireperson Moore: ... I just think there would have to be something that would make her bring these allegations.

Gibson: Thank you. Anyone else share their opinions? ...

Bohannan: I agree with them, too.

Gibson: So would you tend to believe the girl?

Bohannan: Yeah, I would.

Gibson: So you would tend to believe her?

Bohannan: There would have to be something, why would she come up and just start?

Later, during voir dire, Bohannan again responded to one of Gibson's questions:

Gibson: Those of you who have children, would anyone here lie to protect their children?

. . . .

Bohannan: Yes.

Gibson: Because you love your kids?

Bohannan: Yes.

Gibson: You don't want to ever see your kids suffer any more pain than they have to?

Bohannan: No.

While Gibson challenged several venirepersons for cause and used peremptory strikes against several others, he did not mention nor attempt to strike Bohannan. In rejecting Movant's claim for post-conviction relief, the motion court found that, "Movant's attorney was fully aware of the answers of ... Bohannan, considered them, and determined as matter of trial strategy not to challenge [her]. The explanation of counsel for this strategy was reasonable in the context of the trial. The evidence does not support Movant's claim."

■ A criminal defendant is entitled to a fair and impartial jury. U.S. CONST. amends. VI, XIV; MO. CONST. art. I, sec. 18(a); *State v. Tinsley,* 143 S.W.3d 722, 731 (Mo.App. S.D.2004). To qualify as a juror, a venireperson must enter upon that service with an open mind, free from bias and prejudice. *State v. Wheat,* 775 S.W.2d 155, 158 (Mo. banc 1989). The qualifications of a prospective juror are determined from the basis of the entire examination, not by a single response. *Tinsley,* 143 S.W.3d at 732.

■ While Movant cites to Gibson's post-conviction deposition testimony, he has not filed that deposition with this court. Rule 29.15 proceedings are governed by the Missouri Rules of Civil Procedure. Rule 29.15(a). Accordingly, the requirements for the record on appeal as to a Rule 29.15 proceeding are governed by Rule 81.12. *Evans v. State,* 70 S.W.3d 483, 486 (Mo.App. W.D.2002). "Rule 81.12 imposes the duty on movant, as appellant, to file the transcript and to prepare a legal file so that the record contains all the evidence necessary for us to make determinations on the issues raised." *Id.* (quoting *Helmig v. State,* 42 S.W.3d 658, 670 (Mo.App. E.D.2001)).

■ The motion court found that Gibson's explanation for not moving to strike Bohannan for cause was a reasonable trial strategy "in the context of the trial." "The decision to strike a venireperson is generally a matter of trial strategy." *Boyd v. State,* 86 S.W.3d 153, 158 (Mo.App. E.D.2002). "Reasonable decisions regarding trial strategy cannot be the basis for an ineffective assistance of counsel claim." *Id.* "However, the failure to challenge a venireperson who admits to a prejudice to the defendant's detriment constitutes ineffective assistance absent an acceptable explanation." *State v. Shaw,* 945 S.W.2d 590, 592 (Mo.App. E.D.1997). "For trial strategy to be the basis for denying a Rule 29.15 claim, however, the strategy must be reasonable." *Anderson v. State,* 196 S.W.3d 28, 40 (Mo. banc 2006). Without Gibson's deposition testimony, we have no way of determining whether the motion court's finding is clearly erroneous. Because Movant has failed to provide this Court with the necessary record on appeal to review this claim of error, we must deny this point. *See Evans,* 70 S.W.3d at 486.

In his second point, Movant contends that Gibson was ineffective in failing to impeach Dr. Hagen's trial testimony that she did not remember Victim ever talking about R.K.C. touching her inappropriately, when Dr. Hagen had testified at an earlier hearing that Victim had talked about inappropriate touching by R.K.C. Movant argues that Gibson's failure to impeach Dr. Hagen prejudiced him because his defense was that R.K.C. and Walker had abused Victim and not Movant. We disagree.

■ We reiterate that to prevail on a claim of ineffective assistance of counsel, Movant must prove that (1) trial counsel failed to exercise the degree of skill, care and diligence of a reasonably competent attorney, and (2) that failure prejudiced Movant. *Maclin,* 184 S.W.3d at 107. The mere failure to impeach a witness does not entitle a movant to post-conviction relief. *State v. Phillips,* 940 S.W.2d 512, 524 (Mo. banc 1997). Rather, Movant has the burden of showing that the impeachment would have provided him with a defense or would have changed the outcome of the trial. *Id.* Here, Movant has shown neither.

■ Movant argues that "had [Gibson] impeached [Dr.] Hagen with her previous testimony, her statement that [Victim] had accused [R.K.C.] of touching her inappropriately would have been ... evidence that would have provided [Movant] with the defense that it was [R.K.C.] and [Walker] who sexually abused [Victim]." Evidence that others had sexually abused Victim was elicited at trial from the following witnesses: Dr. Hagen testified at trial that Victim reported that Walker had sexually abused her; Bristow testified that Victim reported that R.K.C. had inappropriately touched her; Victim herself testified that she performed oral sex on R.K.C.; Brown testified that Victim had stated that Walker had sexually abused her; and, in a videotaped interview played for the jury, Victim stated that Walker had sexually abused her.

■ The record clearly shows that Gibson's failure to impeach Dr. Hagen regarding her prior inconsistent statement did not deprive Movant of his defense that others had sexually abused Victim. "If a prior inconsistent statement by a state's witness does not give rise to a reasonable doubt as to defendant's guilt, such impeachment evidence is not the basis for a claim of ineffective assistance of counsel." *State v. Twenter,* 818 S.W.2d 628, 640 (Mo. banc 1991).

The motion court found that even had Gibson impeached Dr. Hagen regarding her prior inconsistent statement, there was no probability that the outcome of the trial would have been different. We do not believe that this finding is clearly erroneous. Movant's second point is denied.

In his third point, Movant maintains that Gibson was ineffective for failing to call Dr. Sethi as a witness, because Dr. Sethi would have testified that Victim had injuries of recent origin which were consistent with recent sexual abuse. Movant argues that such testimony would have provided him with a defense, because the only recent contact he had with Victim was during supervised visits.

■ "Under most circumstances, the choice of witnesses is a matter of trial strategy and will not support a claim of ineffective assistance of counsel." *Winder v. State,* 151 S.W.3d 413, 417 (Mo.App. S.D.2004). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. "However, where counsel lacks the information to make an informed judgment, because of inadequate investigation, any argument as to trial strategy is inappropriate." *Stott v. State,* 182 S.W.3d 728, 732 (Mo.App. S.D.2006). Trial counsel may be found ineffective for the failure to locate and call witnesses where Movant can demonstrate each of the following: "1) trial counsel knew or should have known of the existence of the witness; 2) the witness could be located through reasonable investigation; 3) the witness would testify, and 4) the witness's testimony would have

produced a viable defense." *Hutchison v. State,* 150 S.W.3d 292, 304 (Mo. banc 2004).

 Movant argues that, in his deposition testimony, Gibson read a portion of a report made by Dr. Sethi after she had examined Victim, in which she indicated that Victim had injuries that were the result of recent sexual abuse. As stated earlier, Movant has not filed a transcript of Gibson's deposition with this Court. "Rule 81.12 imposes the duty on movant, as appellant, to file the transcript and to prepare a legal file so that the record contains all the evidence necessary for us to make determinations on the issues raised." *Evans,* 70 S.W.3d at 486 (quoting *Helmig,* 42 S.W.3d at 670). Without Gibson's deposition testimony, we have no way of determining whether the motion court clearly erred in finding that Gibson was not ineffective in failing to call Dr. Sethi as a witness. Specifically, we cannot determine from the record before this Court what Dr. Sethi's testimony would have been and whether it would have provided a viable defense. *Hutchison,* 150 S.W.3d at 304. Because Movant has failed to provide this Court with the necessary record on appeal to review this claim of error, we must deny this point. *See Evans,* 70 S.W.3d at 486. Movant's third point is denied.

The judgment of the motion court is affirmed.

BATES, C.J., and BARNEY, J., concur.